NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ROCHEUX INTERNATIONAL OF NEW JERSEY, INC., | ) ) ) | Hon. Garrett E. Brown, Jr. |
| Plaintiff, | ) ) ) | Civ. No. 06-6147 |
| v. | ) ) | **MEMORANDUM OPINION** |
| U.S. MERCHANTS FINANCIAL GROUP, INC., U.S. MERCHANTS, INC. (a division of U.S. Merchants Financial Group, Inc., and/or d/b/a U.S. Merchants), THE MERCHANT OF TENNIS INC., and DIVERSIFIED REPACKAGING CORP., | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

Brian William McAlindin, Esq.
BATHGATE, WEGENER & WOLF, P.C.
1 Airport Road
Lakewood, New Jersey 08701
*Attorneys for Plaintiff*

Brian J. McMahon, Esq.
GIBBONS, PC
One Gateway Center
Newark, New Jersey 07102-5310
*Attorneys for Defendants*

**BROWN, Chief Judge:**

      This matter comes before the Court upon Defendants' motion (Doc. No. 52) to exclude Plaintiff's designated expert witness Jorge Gutierrez as an improperly paid fact witness. In addition to the exclusion of Mr. Gutierrez as a witness, Defendants seek an order excusing them

from paying the deposition fee charged by Mr. Gutierrez, permitting supplemental discovery into the events precipitating this arrangement, and imposing sanctions in the form of attorneys' fees and costs incurred in responding to the misconduct of Plaintiff's counsel. This Court held oral argument on September 16, 2009. For the following reasons, the Court will grant Defendants' motion, but the Court will only grant part of the relief sought by Defendants at this time.

**I.    BACKGROUND**

This case involves a contract dispute between Plaintiff Rocheux International of New Jersey, Inc. ("Rocheux"), a distributor of raw plastic materials, and Defendants, providers of plastic product-packaging services, concerning invoices billed in 2006, but the instant dispute concerns Rocheux's retention and subsequent payment of Mr. Gutierrez as an expert witness. Defendants essentially allege that Mr. Gutierrez, a disgruntled former employee of Defendant The Merchant of Tennis Inc., contacted Plaintiff and eventually Plaintiff's counsel Brian McAlindin during the discovery period of this case in 2008, offering allegedly damaging testimony regarding that Defendant's business practices in exchange for a fee, and that Mr. McAlindin arranged for payment of more than $4,000 to Mr. Gutierrez for his testimony.

Although Plaintiff's counsel initially identified Mr. Gutierrez as a witness "possess[ing] knowledge regarding SAP Accounting Modules, specifically those employed by Merchant of Tennis," in an August 26, 2008 letter to defense counsel (Subervi Certif., Ex. B), he subsequently notified defense counsel by letter of October 31, 2008, that "Plaintiff w[ould] rely on Mr. Gutierrez as an expert witness regarding Edwards Software Modules and as a fact witness regarding business records and calculations regarding materials utilized by Merchants of Tennis in their manufacturing process," (Subervi Certif., Ex. C). That notification, which included Mr.

Gutierrez's sworn affidavit, came well after the September 30, 2008 deadline for affirmative expert reports set by Magistrate Judge Esther Salas in the July 24, 2008 Revised Scheduling Order. (Doc. No. 41 ¶ 3.) The Gutierrez Affidavit indicated that Mr. Gutierrez worked for The Merchant of Tennis in or about March 2008 and contained the following allegations: (1) that the Defendant's JD Edwards accounting software worked properly; (2) that Mr. Gutierrez's supervisor there asked him to change data in the software system; and (3) that the Defendant engaged in unethical business practices at the direction of its CEO. (*See* Subervi Certif., Ex. C, Gutierrez Aff. ¶¶ 4–10.)

Upon receipt of the affidavit, defense counsel noticed Mr. Gutierrez for a deposition that would take place on January 16, 2009. In November prior to the deposition, Mr. McAlindin notified Defendants that Mr. Gutierrez would charge a $1,500 fee for his deposition testimony. (Subervi Certif., Ex. K.) During the deposition, Mr. Gutierrez revealed that he had been paid more than $4,000[1] by Plaintiff's counsel, but that he understood the fee to compensate him for his consulting services (specifically, his communications with counsel and time reviewing the affidavit) rather than his expected expert testimony, and he admitted that he submitted no expert reports to Plaintiff's counsel regarding the operation of the JD Edwards software system. (*See* Subervi Certif., Ex. E ("Gutierrez Dep.") at 54–59.) Defendants also deposed Plaintiff's Vice President of Operations Robert Stephanoff, who had been Mr. Gutierrez's initial point-of-contact with Rocheux. Mr. Stephanoff disclaimed any knowledge regarding why Mr. Gutierrez first contacted Rocheux, whether he requested payment for his testimony, and whether he was in fact

---

[1] Plaintiff does not contest that Mr. Gutierrez was paid more than $4,000 for his time working on this case. (*See* Subervi Certif., Ex. H, Invoice (indicating that Mr. Gutierrez billed Plaintiff's counsel $4,275 for his services).)

paid by counsel, but noted that he referred Mr. Gutierrez to Mr. McAlindin, whom he thought would know what to do. (*See* Subervi Certif., Ex. F at 16–21, 44.) When defense counsel probed into conversations between Mr. Stephanoff and Mr. McAlindin regarding whether Mr. Gutierrez qualified as an expert witness that could be paid for his services, Mr. McAlindin instructed Mr. Stephanoff not to answer those questions, ostensibly on grounds of attorney-client privilege. (*See id.* at 30–32.)

During his deposition, Mr. Gutierrez explained that he had originally contacted Rocheux to inform them that he had information that might be helpful to their lawsuit. (*See* Gutierrez Dep. at 29:4–12.) He also noted that he first discussed compensation with Mr. McAlindin at the October 24, 2008 meeting where he signed the affidavit (*see id.* at 25, 56), because prior to that time, it was "up in the air" whether his testimony would be used in the lawsuit (*see id.* at 53). When asked about the specifics of his allegations about changing data at the request of his supervisor and unethical business practices, Mr. Gutierrez conceded that he did not know whether he was being asked to correct or falsify the data, and he pointed to a handful of instances where customers informed him that his employer had been late on making payments to other vendors. (*See id.* at 77–80, 85–94.)

On March 27, 2009, Defendants moved to exclude Mr. Gutierrez as an improperly paid fact witness, arguing that Plaintiff's counsel wrongfully listed Mr. Gutierrez as an expert witness, despite the lay factual basis of his testimony, in order to bypass the legal bar to payment of fact witnesses and obtain testimony damaging to Defendants. In addition to exclusion of the witness, Defendants seek an order: (1) excusing their payment of Mr. Gutierrez's expert witness deposition fee, (2) requiring additional deposition testimony from Plaintiff's representatives and

Plaintiff's counsel regarding the retention of Mr. Gutierrez, and (3) imposing appropriate sanctions for the unethical behavior of Plaintiff's counsel.

## II.   DISCUSSION

It is well established that courts have "*inherent* authority to impose sanctions upon those who would abuse the judicial process." *Republic of the Philippines v. Westinghouse Elec.*, 43 F.3d 65, 73 (3d Cir. 1994) (emphasis in original) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–44 (1991)). These powers are "'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Chambers*, 501 U.S. at 43 (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962)).

The Supreme Court has cautioned, however, that "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44. Towards this end, the Third Circuit has required that district courts make certain findings to "ensure that the sanction is tailored to address the harm identified." *Republic of the Philippines*, 43 F.3d at 74. First, the court must examine the conduct at issue and explain why a sanction is justified. *See id.* Specifically, the court should consider whether the conduct is part of a pattern of wrongdoing, the severity of the infraction, and the level of harm or prejudice to the adversary. *See id.* Second, the court must consider the range of available sanctions and explain why it has chosen the particular sanction. *See id.*

Rule 3.4(b) of the New Jersey Rules of Professional Conduct provides in pertinent part that "[a] lawyer shall not . . . offer an inducement to witness that is prohibited by law[.]" Typically, lawyers may only compensate fact witnesses for: (1) reasonable expenses incurred by

a witness to attend the trial, and (2) reasonable compensation for the loss of the witness's time in attending the trial to testify. *In re PMD Enters.*, 215 F. Supp. 2d 519, 529–30 (D.N.J. 2002) (citation omitted). Congress codified this common law principle at 18 U.S.C. § 201, the criminal statute prohibiting bribery of public officials and witnesses. *See* 18 U.S.C. § 201(b)(3), (d) (generally prohibiting payment of witnesses, but permitting payment "by the party upon whose behalf a witness is called . . . , of the reasonable cost of travel and subsistence incurred and the reasonable value of time lost in attendance at any such trial, hearing, or proceeding"). Courts have reinforced this rule by deeming non-conforming agreements to compensate fact witnesses unenforceable for lack of consideration and being contrary to public policy. *See In re PMD Enters.*, 215 F. Supp. 2d at 530 (citing *Hamilton v. Gen. Motors Corp.*, 490 F.2d 223, 227–29 (7th Cir. 1973); *Alexander v. Watson*, 128 F.2d 627, 630 (4th Cir. 1942)).

  Here, it is clear that Mr. Gutierrez is a fact witness, and that Plaintiff's counsel improperly procured payment for Mr. Gutierrez's factual testimony. During oral argument, when the Court asked Mr. McAlindin to identify the portion of the Gutierrez Affidavit that contained Mr. Gutierrez's anticipated expert testimony, Mr. McAlindin pointed to paragraphs 4 and 5, which contained Mr. Gutierrez's assertions that, while working for The Merchant of Tennis in or about March 2008, he accessed and downloaded information from their JD Edwards Software Accounting Module regarding purchase orders, accounts, and data about thermoformed products and part production, and he observed the software system "to operate as designed without any problems, bugs, or defect." (Subervi Certif., Ex. C, Gutierrez Aff. ¶¶ 4, 5.) The Court must reject the position of Plaintiff's counsel.

  Not only do the observations about the software system contained in these paragraphs

lack the factual basis and reliable methodology required by Federal Rule of Evidence 702 for expert opinion testimony, *see Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 592–95 (1993), *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741–42 (3d Cir. 1994), but they are irrelevant, because: (1) they would serve no purpose other than collateral impeachment, because Defendants do not appear to present a defense to the contract claims based upon the functionality of the JD Edwards Software Accounting Module, and (2) these observations concern the operation of the software system more than a year after the events that precipitated this lawsuit.  (*See generally* Answer; *see also* Oral Argument Tr. at 31:11–32:4 (representation of defense counsel that Defendants would not interpose a defense based on the software system); Compl. ¶¶ 19–22 (alleging that Defendants failed to pay invoices over the course of several months in 2006).) Furthermore, it is quite clear that the allegations of data manipulation and unethical business practices contained in subsequent paragraphs of the Gutierrez Affidavit constitute factual evidence based on lay observation.  (*See* Subervi Certif., Ex. C, Gutierrez Aff. ¶¶ 6–10.)

      Mr. McAlindin has failed to present a cogent explanation for treating Mr. Gutierrez as an expert witness, and the fee paid to Mr. Gutierrez most certainly did not compensate for his costs of attending trial or time lost during trial.  Mr. Gutierrez was a fact witness, and his payment by Plaintiff's counsel clearly runs afoul of the longstanding prohibition against payment of fact witnesses.  Witnesses brought before a court are duty-bound to tell the truth, and the payment of witnesses for their testimony "leans toward the procurement of perjury; toward the raising up of a class of witnesses who, for a sufficient consideration, will give testimony that shall win or lose the lawsuit, toward the perversion of justice; and toward corruption in our courts." *Hamilton*, 490 F.2d at 228 (quoting *Wright v. Somers*, 125 Ill. App. 256, 256 (1906)).

Mr. McAlindin's decision to pay Mr. Gutierrez for factual testimony has cast a cloud over the legitimacy of that testimony, and the Court must prevent this suspect evidence from contaminating future proceedings. Federal Rule of Evidence 403 permits this Court to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice," and other courts have recognized that the proper sanction for the wrongful payment of fact witnesses is the exclusion of the tainted witnesses. *See, e.g.*, *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n*, 865 F. Supp. 1516, 1526–27 (S.D. Fla. 1994) (excluding "testimony given in this action by any of the fact witnesses who received monetary compensation from [counsel]"), *rev'd in part on other grounds*, 117 F.3d 1328, 1335 n.2 (11th Cir. 1997) (approving of the district court's exclusion of paid fact witnesses). Because this Court finds such a sanction necessary to protect the integrity of these proceedings, the Court will exclude the testimony of Mr. Gutierrez. The Court will further excuse Defendants from payment of Mr. Gutierrez's expert deposition fee, which Mr. Gutierrez based on his internet research of fees charged by expert witnesses (Subervi Certif., Ex. E at 8:17-25), because such payment would only validate the wrongful payment of a fact witness.

In addition to the exclusion of Mr. Gutierrez and exemption from his expert deposition fee, Defendants seek additional deposition testimony from Mr. Stephanoff and Mr. McAlindin regarding the retention of Mr. Gutierrez, as well as the payment of defense counsel's expenses relating to their investigation and presentation of this matter to the Court. In light of the Court's ruling, there does not appear to be a need to further depose Mr. Stephanoff or to depose Mr. McAlindin at this time. However, the Court will grant Defendants reasonable attorneys' fees and costs incurred as a result of the misconduct underlying the instant motion. Defendants will have

30 days from the entry of the accompanying Order to submit descriptive time entries and supporting documentation from its billing records relating to reasonable attorneys' fees and costs arising from this motion and the precipitating misconduct.

At this time, Defendants do not seek the more severe sanction of disqualifying Mr. McAlindin, and this Court is satisfied for the time being that exclusion of the witness, exemption from the expert deposition fee, and monetary compensation for the expense incurred by Defendants in bringing and prosecuting this motion will properly address this infraction. The Court will reserve judgment on the need for additional sanctions or disciplinary action pending further application.

## III.   CONCLUSION

For the aforementioned reasons, the Court will grant Defendants' motion and exclude Mr. Gutierrez as an improperly paid fact witness. Accordingly, the Court will excuse Defendants from paying the expert deposition fee sought by Mr. Gutierrez. Defendants will have 30 days to submit for the Court's *in camera* review descriptive time entries from its billing records and other documentation relating to reasonable attorneys' fees and costs incurred in investigating this misconduct and prosecuting this motion. The Court will reserve judgment on the propriety of additional sanctions for the misconduct of Plaintiff's counsel pending further application. An appropriate order form accompanies this Memorandum Opinion.

Dated: October 5, 2009

                                                                    /s/ Garrett E. Brown, Jr.
                                                 GARRETT E. BROWN, JR., U.S.D.J.